[No. 10926-3-II.   Division Two.   March 15, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. HAROLD S. GOUGH, *Appellant.*

*Don A. McConnell* and *Taylor & McConnell,* for appellant (appointed counsel for appeal).

*Patrick D. Sutherland, Prosecuting Attorney,* and *James C. Powers, Deputy,* for respondent.

WORSWICK, J.—We are asked to decide whether the defense of diminished capacity is a "lesser included defense," encompassed within the defense of insanity. We hold that it is not, and we affirm Harold S. Gough's conviction for murdering his wife.

Gough has a lengthy history of mental illness. After he stabbed his wife to death in 1986, he said that she was a witch or supernatural being who controlled his mind, and that the killing was a blood sacrifice to protect him from supernatural powers. Several mental health professionals

testified at Gough's trial. The trial court instructed on the insanity defense, but refused a proposed instruction on diminished capacity. The jury convicted Gough of first degree murder.

Gough's complete exception to the court's failure to give his proposed diminished capacity instruction is as follows:

It is our position that the defense of insanity also raises the defense of capacity and, in this case, evidence exists of diminished capacity.

Two propositions are included in this brief statement. The first, that diminished capacity is a "lesser included defense" within the defense of insanity, is incorrect as a matter of law. The second, that the evidence is this case justified a diminished capacity instruction, is incorrect as a matter of fact.

Both defenses can be available in a single case, if there is evidence supporting each. *State v. Martin,* 14 Wn. App. 74, 75, 538 P.2d 873 (1975). In this case, however, while there was ample evidence to support the insanity defense, there was none supporting a diminished capacity defense.

The testimony on which Gough relies is that of defense psychiatrist Dr. John Petrich. Two excerpts from his testimony are instructive. First, the following testimony was tendered by counsel as an offer of proof on the issue of diminished capacity:

Q. Dr. Petrich, what is your opinion as to whether to a reasonable medical probability a person in the circumstances on the day of the crime, that is, Mr. Gough, we have discussed 13 years of psychiatric treatment and hospitalization, auditory hallucinations, delusional thinking, use of alcohol, non–use of medication in terms of your opinion whether such a person as a result of this mental disorder would be capable of forming an intent to injure under those circumstances?

A. Under the circumstances as we know them, as I know them from the records and from examining the patient—or do you mean theoretically? I'm confused.

Q. Under the circumstances as you know them from examining this patient.

A. Under the circumstances as I know them from examining the patient and reviewing the history, it is my opinion he did not have the capacity.

Q. Dr. Petrich, *what is your view of the relationship of insanity and the ability to have capacity*?

A. My view of the relationship?

Q. Yes.

A. Well, my understanding of the wordings of the law are that *insanity is a much higher reflection, a higher degree of incapacity. Psychiatric incapacity and diminished capacity reflects a lower degree of incapacity. . . .*

(Italics ours.) Later, because of the manner in which Dr. Petrich had equated insanity and diminished capacity, the court examined him, again in the jury's absence, as follows:

Q. Dr. Petrich, from hearing you testify the other day and this morning, it is my understanding it is your considered medical opinion that the defendant was insane at the time as defined by State law, that because of a mental disorder, upon which you have testified, you believe he is unable to determine right from wrong.

*Is it the same mental condition or disorder which leads you to conclude that he could not form any premeditation or intent* to commit the crime?

A. *Yes,* Your Honor, the same psychiatric disorders.

Q. *Exactly the same*?

A. *Precisely the same.*

Q. *In any case in which you would preclude [sic] he was insane, it would follow that that defendant could not inform [sic] the requisite intent to kill* or any premeditation?

A. *Yes,* Your Honor, that is my interpretation of the standards in my mind.

(Italics ours.) The court correctly ruled that this testimony was insufficient to support a defense of diminished capacity.

The testimony (and Gough's argument) that somehow diminished capacity is of the same quality as, albeit a lesser malady than, insanity, and that the greater ipso facto includes the lesser, reflects a failure to appreciate the difference between these two defenses.

■ Diminished capacity arises out of a mental disorder, usually not amounting to insanity, that is demonstrated to have a specific effect on one's capacity to achieve the level of culpability required for a given crime. *State v. Ferrick,* 81 Wn.2d 942, 944, 506 P.2d 860, *cert. denied,* 414 U.S. 1094 (1973), *modified in State v. Griffin,* 100 Wn.2d 417, 418, 670 P.2d 265 (1983). Evidence of such a condition is admissible only if it tends logically and by reasonable inference to prove that a defendant was incapable of having the required level of culpability. *See Ferrick,* 81 Wn.2d at 944. Existence of a mental disorder is not enough, standing alone, to raise an inference that diminished capacity exists, nor is conclusory testimony that the disorder caused a diminution of capacity. The testimony must explain the connection between the disorder and the diminution of capacity. *State v. Edmon,* 28 Wn. App. 98, 103, 621 P.2d 1310, *review denied,* 95 Wn.2d 1019 (1981).

Diminished capacity is distinguished from insanity because as a legal defense the latter has to do only indirectly, if at all, with a specific mental state. The legal defense of insanity encompasses a host of mental disorders, some of which may presumably diminish capacity and some of which may not, but all of which operate to excuse the crime because of a particular quality of the impairment. *State v. Box,* 109 Wn.2d 320, 329, 745 P.2d 23 (1987). Diminished capacity, on the other hand, allows a defendant to undermine a specific element of the offense, a culpable mental state, by showing that a given mental disorder had a specific effect by which his ability to entertain that mental state was diminished. It is apparent that a mental disorder may amount to insanity and also have a specific effect on the afflicted's capacity to achieve a culpable mental state. However, diminished capacity does not ipso facto follow from insanity. For example, one can be insane under the *M'Naghten* rule and still be capable of intending to accomplish a result defined by law as a crime. RCW 9A.08-.010(1)(a); *Box,* 109 Wn.2d at 326, 329.

The testimony of Dr. Petrich was deficient. It did not explain how Gough's mental condition specifically related to his inability to achieve a culpable mental state. Rather, it assumed, incorrectly, that insanity ipso facto includes diminished capacity. A diminished capacity instruction was not required.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ALEXANDER, C.J., and PETRICH, J., concur.

Review denied at 112 Wn.2d 1026 (1989).