[No. 10238-6-III.   Division Three.   March 3, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM NORMAN STUMPF, *Appellant*.

*Rick L. Hansen* and *Rakow & Hansen,* for appellant.

*Gerald A. Matosich, Prosecuting Attorney,* for respondent.

THOMPSON, J. — William N. Stumpf appeals his conviction and exceptional sentence for the attempted first degree murder of his wife. We affirm his conviction, but remand for resentencing within the standard range.

The defendant and his wife, Cora, separated in July 1988, and the defendant moved out of their Dallesport home. On the evening of October 13, 1988, he returned. He went into his wife's bedroom, beat her with his fists and attempted to strangle her. Attempts by the couple's 12-year-old son to stop the attack were unsuccessful.

The defendant then dragged his wife from her bed to the backyard where he continued to beat her. He left, drove to The Dalles, Oregon, and broke into a church. He waded through the baptismal font, then returned to the family home. By this time, his children and a neighbor had summoned help and sheriff's deputies had arrived. The defendant was arrested and charged with attempted first degree murder.

The defendant pleaded not guilty by reason of insanity. He was evaluated by staff at Eastern State Hospital and found legally sane and not suffering from diminished capacity at the time of the attack. Nevertheless, at pretrial hearings, defense counsel indicated his intent to defend on the basis the defendant suffered from diminished capacity.

The defendant's son testified at trial to the occurrence and the defendant's participation in the attack. In addition,

there was considerable testimony as to incriminating statements made by the defendant to friends and family after the attack as well as the incriminating testimony of the defendant. The defendant offered no expert testimony to support his contention he suffered from diminished capacity at the time of the attack. The jury was instructed on attempted first degree murder and attempted second degree murder.

Defense counsel assigns error to the trial court's exclusion of lay testimony as to his alleged diminished capacity, the failure to instruct on diminished capacity, the failure to instruct on lesser included offenses, and the imposition of an exceptional sentence. The defendant, pro se, contends his *Miranda* rights were violated, the prosecutor withheld evidence, and there is new and additional evidence to support his diminished capacity defense.

## DIMINISHED CAPACITY

The defendant contends he suffered "command delusions" which prevented him from achieving the requisite intent to cause his wife's death.[1] He attributes these delusions to a head injury he sustained several years before he attacked his wife. He assigns error to the trial court's refusal to allow lay witnesses to testify as to his mental disorder as well as the refusal to give a diminished capacity instruction.

> Diminished capacity arises out of a mental disorder, usually not amounting to insanity, that is demonstrated to have a specific effect on one's capacity to achieve the level of culpability required for a given crime.

*State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028, *review denied*, 112 Wn.2d 1026 (1989). *See also State v.*

---

[1] The defendant was charged with attempted first degree murder under RCW 9A.32.030(1)(a) which, along with other elements, requires proof of "premeditated intent to cause the death of another person . . .". The jury was also instructed on attempted second degree murder under RCW 9A.32.050(1)(a) which, along with other elements, requires proof of "intent to cause the death of another person but without premeditation . . .".

*Swagerty*, 60 Wn. App. 830, 833, 810 P.2d 1 (1991). As a defense, diminished capacity allows a defendant to negate the culpable mental state element of a crime "by showing that a given mental disorder had a specific effect by which his ability to entertain that mental state was diminished." *Gough*, at 622.[2]

Competent evidence regarding a mental disorder is admissible whenever it tends logically and by reasonable inference to prove or disprove that a defendant was capable of possessing the required level of culpability. *State v. Ferrick*, 81 Wn.2d 942, 944, 506 P.2d 860, *cert. denied*, 414 U.S. 1094 (1973), *modified in State v. Griffin*, 100 Wn.2d 417, 418-19, 670 P.2d 265 (1983); *State v. Edmon*, 28 Wn. App. 98, 103, 621 P.2d 1310, *review denied*, 95 Wn.2d 1019 (1981).

The defendant's assignment of error as to the trial court's refusal to admit lay testimony raises two issues: whether the defendant's offer of proof was sufficient to show the foundational requirements could be met and whether lay testimony as to the defendant's command delusions was admissible at all, in the absence of an expert opinion as to the defendant's diminished capacity.

Lay witness testimony is admissible to establish a criminal defendant's "mental state", subject to the following requirements:

---

[2]The diminished capacity defense as developed in Washington has been more accurately described as a rule of evidence as set forth in LaFond & Gaddis, *Washington's Diminished Capacity Defense Under Attack*, 13 U. Puget Sound L. Rev. 1, 22 (1989):

> [T]he so-called diminished capacity defense in Washington is essentially a rule of evidence. Some of the cases admit expert evidence to prove that the defendant lacked the "capacity" or "ability" to form the necessary mental element, while others hold that expert evidence is relevant to prove the defendant did not act with the necessary state of mind. Some commingle the two approaches. Regardless of the precise form of the expert testimony, it is simply a court-made rule which permits a defendant in a criminal trial to introduce evidence relevant to the presence or absence of subjective states of mind. It is not a plea in mitigation, an affirmative defense, or a normative re-fashioning of the culpability elements of the crime.

(Footnotes omitted.)

1. The lay witness must have had a sufficient acquaintance with the defendant or must have had sufficient time to observe the defendant. *State v. Miller*, 177 Wash. 442, 450, 32 P.2d 535 (1934); *State v. Stoudamire*, 30 Wn. App. 41, 47, 631 P.2d 1028, *review denied*, 96 Wn.2d 1011 (1981).

2. The witness must testify, at least in a general way, as to the peculiar facts and circumstances on which his or her conclusion is based. *E.g.*, *State v. Wilkins*, 156 Wash. 456, 287 P. 23 (1930).

3. The testimony must refer to the defendant's mental condition at or close to the time the witness made the observation and at or close to the time the offense at issue occurred. *E.g.*, *State v. Smith*, 16 Wn. App. 300, 302, 555 P.2d 431 (1976), *review denied*, 88 Wn.2d 1014 (1977).

Testimony by lay witnesses is also governed by ER 701 which provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

■ Although lay testimony may be admitted to supplement expert testimony if the proper foundational requirements are met, the existence of an alleged mental disorder such as that asserted here and its connection with the diminished capacity constitute subject matter beyond lay expertise. Therefore, when a diminished capacity defense is asserted in a criminal action, expert testimony is required to establish the existence of the alleged mental disorder, as well as the requisite causal connection between the disorder and the diminished capacity.[3] In so holding, we rely on the general rule that expert testimony is required "when an essential element in a case is best established by opinion but the subject matter is beyond the expertise of a lay

---

[3]Foundational requirements necessary before an expert may give an opinion regarding the defendant's diminished capacity have received considerable attention. The requirements were summarized in *Edmon*, at 103-04. *See also State v. Thamert*, 45 Wn. App. 143, 147, 723 P.2d 1204, *review denied*, 107 Wn.2d 1014 (1986).

witness." 5A K. Tegland, Wash. Prac., *Evidence* § 300, at 435 (3d ed. 1989).[4]

Admissibility of lay testimony was argued before trial, before the first witness was called, and after the State rested.[5] The trial court ruled that while the defendant could say anything he wanted as to what he intended, and lay witnesses could corroborate defendant's testimony and rebut the testimony of the State's experts, lay witnesses alone could not establish a diminished capacity defense. The court further ruled that the testimony offered was not sufficiently close or connected to the offense at issue to be admissible.

■ The trial court has considerable discretion regarding the admissibility of both lay and expert testimony and its decisions will be upheld if not manifestly unreasonable or if not exercised on untenable grounds or for untenable reasons. *E.g., Stoudamire,* at 47.

The trial court did not abuse its discretion in limiting the admission of lay testimony. There was no expert evidence that the defendant suffered from diminished capacity. Additionally, the offers of proof indicated the requisite foundational requirements could not be met. We therefore need not address the defendant's contention that even if the proffered

---

[4]*See, e.g., Walker v. Bangs,* 92 Wn.2d 854, 601 P.2d 1279 (1979) (in legal malpractice action alleging negligence in conduct of personal injury claim, expert testimony is required to establish applicable standard of care); *Adams v. Richland Clinic, Inc., P.S.,* 37 Wn. App. 650, 681 P.2d 1305 (1984) (in medical malpractice case, lack of informed consent requires expert testimony to define existence, nature of the risk and the likelihood of its occurrence); *Wagner v. Flightcraft, Inc.,* 31 Wn. App. 558, 643 P.2d 906 (in products liability action, proof of design defect in airplane engine requires expert testimony), *review denied,* 97 Wn.2d 1037 (1982).

[5]The State's expert from Eastern State Hospital (Dr. Cressey) testified that a physical and neurological examination of the defendant revealed nothing abnormal. The defendant had "no systematized delusional systems", was "not schizophrenic" and "had no command hallucinations". He acknowledged that a serious head injury could produce such symptoms. Dr. Cressey stated that a person with command hallucinations would be insane or suffering from a diminished capacity to form an intent. He concluded that the defendant was not making up the voices he heard, but the voices or commands were simply intrusive thoughts.

testimony were inadmissible, the State "opened the door" to its introduction.

To support a diminished capacity instruction, there must not only be substantial evidence of the mental disorder, but the evidence must also explain *the connection between* the disorder and the diminution of capacity. *Griffin*, at 418-19; *Edmon*, at 103-04. Since the only evidence as to the defendant's "command delusions" consisted of the defendant's testimony, the trial court's refusal to give a diminished capacity instruction was proper under *Griffin*.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

SHIELDS, C.J., and MUNSON, J., concur.