[No. 39254-2-II.   Division Two.   December 7, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. RHONDA L. MARCHI, *Appellant*.

---

*Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Deborah S. Kelly, Prosecuting Attorney,* and *Brian P. Wendt, Deputy,* for respondent.

¶1 VAN DEREN, J. — Rhonda L. Marchi appeals her convictions for attempted first degree murder and first degree assault of a child. She argues that (1) convictions for both crimes violate her right to be free from double jeopardy and (2) the trial court erred in failing to instruct the jury that it was the State's burden to disprove her diminished capacity defense beyond a reasonable doubt. We affirm the trial court's ruling that the State has no burden to disprove her diminished capacity defense, but, under the facts of this case, Marchi's conviction for first degree assault of a child violates double jeopardy and must be vacated. We thus remand for resentencing for attempted first degree murder only.

## FACTS

¶2 In December 2006, 10 year old MH visited her father in Boise, Idaho. On December 25, MH returned home to her mother, Rhonda Marchi. Marchi met MH at the airport and they drove back to their home in Port Angeles, Washington. "On the drive home [from the airport], M[ ]H . . . told [Marchi] about a disparaging remark her stepmother made regarding [Marchi]. M[ ]H[ ] told [Marchi] this because it hurt her feelings to hear her mother criticized." Clerk's Papers (CP) at 107.

¶3 They arrived home and prepared for bed. MH went to Marchi's room to watch a movie. At about 10:30 PM, Marchi insisted that MH drink a cup of water containing "medicine" to cure a toothache that MH had earlier complained about. Report of Proceedings (RP) (Mar. 10, 2009) at 22. The

"medicine" was actually a potent drug cocktail[1] that quickly rendered MH unconscious.

¶4 When MH became unconscious, Marchi went to her computer and accessed a document titled " 'Last Will dot.doc.' " RP (Mar. 12, 2009) at 84. At 2:05 AM, Marchi called 911 to report that she deliberately gave MH a potent drug cocktail. Emergency personnel found MH unconscious and unresponsive. She remained at a decreased level of consciousness for several hours and began responding only when she was administered a third drug, a reversal agent.

¶5 The State charged Marchi with attempted first degree murder and first degree assault of a child under RCW 9A.36.120(1)(a). At trial, Marchi argued that she did not have the requisite mens rea to commit the offenses due to diminished capacity. As evidence of her diminished capacity, Marchi introduced expert medical testimony and proffered lay testimony from her friends and family who had observed her physical and mental health deteriorate in the months before the incident.

¶6 Marchi's medical expert testified that she suffered from major depressive disorder, certain anxiety disorders, and borderline personality disorder. Her expert opined that she was emotionally and psychologically fragile, which reduced her ability to fully reason and function. When Marchi heard MH relay the disparaging comments made by her stepmother, her emotional state deteriorated further, substantially impairing her ability to form the intent to commit murder.

¶7 The State's rebuttal medical expert opined that Marchi suffered from personality disorder not otherwise specified. The State's expert saw no evidence suggesting that Marchi was unable to act intentionally on the night of the incident.

¶8 A jury convicted Marchi of both crimes and the trial court imposed a mitigated sentence of 12 years' confine-

---

[1] The drug cocktail included 20-100 crushed tablets of an assortment of prescribed medications: Lorazepam, Clonazepam, and Trazodone, which are all central nervous system depressants, and Hydrocodone, a narcotic analgesic.

ment. The court noted that Marchi had done something atrocious, but mitigated the sentence because she called 911 and because there were "some mental health reasons that at least explain – not excuse – but at least explain to some degree what might have occurred." RP (Apr. 30, 2009) at 69.

¶9 Marchi appeals.

## ANALYSIS

I. DOUBLE JEOPARDY

■ ¶10 Marchi first contends that her convictions for attempted first degree murder and first degree assault of a child violate her right to be free from double jeopardy. Our state constitution provides, "No person shall be . . . twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9; *accord* U.S. CONST. amend. V. If double jeopardy results from a conviction for more than one crime, the remedy is vacation of the lesser offense. *State v. Weber*, 159 Wn.2d 252, 265, 149 P.3d 646 (2006).

■ ¶11 When the relevant statutes do not expressly disclose legislative intent to treat the charged crimes as the same offense, we determine whether the charged crimes are the same in law and fact. This is known as the *Blockburger* test. *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 816-17, 100 P.3d 291 (2004). The *Blockburger* test is a rule of statutory construction used to discern legislative purpose. *State v. Calle*, 125 Wn.2d 769, 778, 888 P.2d 155 (1995). We must answer two questions—whether the two charged crimes arose from the same act and, if so, whether the evidence supporting conviction of one crime was sufficient to support conviction of the other crime. *Orange*, 152 Wn.2d at 820. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.

¶12 Here, the two charged crimes arose from the same act, i.e., Marchi drugging MH. Because serving the drug cocktail is both the assault and the substantial step toward first degree murder, the charged crimes are the same in fact. The more difficult question is whether the offenses are the same in law.

¶13 The State argues that the intent required for first degree assault of a child is insufficient to support a conviction for attempted first degree murder, which requires premeditation. And the State argues that, unlike the attempted first degree murder statute, the first degree assault of a child statute requires the State to prove an age differential element. We disagree.

¶14 Evidence required to support a conviction for attempted first degree murder in this case was sufficient to convict Marchi of first degree child assault as charged. The State charged Marchi under RCW 9A.36.120(1)(a), which states, "A person eighteen years of age or older is guilty of the crime of assault of a child in the first degree if the child is under the age of thirteen and the person . . . [c]ommits the crime of assault in the first degree, as defined in RCW 9A.36.011, against the child." RCW 9A.36.120(1)(a) incorporates RCW 9A.36.011 entirely, meaning that the only difference between the two statutes is that RCW 9A.36-.120(1)(a) specifies an age differential element. But under the facts in this case, where Marchi was convicted of attempted first degree murder against a child younger than 13, the evidence required to convict on the attempted first degree murder charge is sufficient to convict Marchi of first degree assault of a child. *See Orange*, 152 Wn.2d at 820 (attempted first degree murder and first degree assault are the same in law).

¶15 We confirm our understanding that the legislature intended to preclude multiple punishments for the crimes of first degree attempted murder and first degree assault of a child by considering other indicia of legislative intent. We determine legislative intent based on legislative history, the

structure of statutes, their purpose, or other sources. *State v. Hughes*, 166 Wn.2d 675, 684, 212 P.3d 558 (2009).

¶16 Based on the vulnerability of young victims, the legislature passed RCW 9A.36.120 to enhance penalties and to address concerns arising from an adult perpetrator's ongoing child abuse of a child younger than 13. FINAL LEGISLATIVE REPORT, 52d Leg., at 118 (Wash. 1992). The Senate Journal also contains pertinent points of inquiry buttressing the legislature's concern with ongoing child abuse. During debate on the statute, Senator Gary Nelson specifically noted, " 'We are trying to get to those situations where an adult repeats the offense against a child--several times--and based on the harm done to the child establishes then whether it is going to be assault against the child in the first, second, or third degree.' " 1 SENATE JOURNAL, 52d Leg., Reg. Sess., at 302 (Wash. 1992). He added that the intent was not to modify the existing law but rather to put child assault between simple assault and homicide by abuse to " 'reflect what might " be the continuous or repetitive type of assaults that are done against children.' " 1 SENATE JOURNAL, at 302.

¶17 Considering this legislative history, we conclude that the legislature intended RCW 9A.36.120 to increase punishment of adults assaulting children younger than 13 by punishing ongoing child abuse with the same severity as first degree assault, even though the individual incidents of ongoing child abuse may not amount to first degree assault. With evidence of ongoing child abuse, the State may charge a class A felony under RCW 9A.36.120(1)(b) and, upon conviction, it carries a seriousness level of XII—the same as first degree assault—based on a quantum of evidence that may not amount to first degree assault under RCW 9A.36.011. Former RCW 9.94A.515 (2006). Accordingly, RCW 9A.36.120(1)(b) serves the legislative intent to increase the punishment for ongoing child abuse.

¶18 Understanding how RCW 9A.36.120(1)(b) effectuates the legislative intent to punish ongoing or repetitive child abuse illuminates that RCW 9A.36.120(1)(a) does not

do so because the evidence that RCW 9A.36.120(1)(a) requires for conviction is identical to that required under RCW 9A.36.011, first degree assault, in which an age differential is irrelevant. Conviction under either RCW 9A.36.120(1)(a) or RCW 9A.36.011 results in a class A felony with a seriousness level of XII. RCW 9A.36.120(2); RCW 9A.36.011(2); former RCW 9.94A.515. Thus, while RCW 9A.36.120(1)(b) clearly serves the legislature's intent to increase punishment for ongoing or repetitive child abuse not rising to the level of first degree assault, RCW 9A.36.120(1)(a) replicates the first degree assault statute, RCW 9A.36.011, and results in the same punishment.[2]

¶19 The sole difference between RCW 9A.36.120(1)(a) and RCW 9A.36.011 is that RCW 9A.36.120(1)(a) states that the perpetrator be 18 or older and that the child be younger than 13. But the age differential is significant only when the State attempts to establish first degree child assault under RCW 9A.36.120(1)(b) with a quantum of evidence that does not amount to first degree assault under RCW 9A.36.011 or a greater crime that encompasses the same conduct. Otherwise, when the evidence amounts to attempted first degree murder or first degree assault, as it did here, the State establishes a child assault under RCW 9A.36.120(1)(a) by virtue of RCW 9A.36.011. As the evidence needed to establish RCW 9A.36.120(1)(a) or RCW 9A.36.011 is the same, the age differential has no effect on the outcome.

¶20 The legislature did not intend to punish a one-time assault of a child that satisfies the elements of attempted first degree murder by imposing an additional punishment for the first degree assault of a child. This outcome is consistent with the conclusion that imposing punishment for both attempted first degree murder and first degree assault violates the defendant's right to be free from double

---

[2] Marchi's convictions may also have encompassed the same criminal conduct. RCW 9.94A.589(1)(a) ("Same criminal conduct" means "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.").

jeopardy. *Orange*, 152 Wn.2d at 816-17. Thus, we hold that Marchi's conviction for first degree assault of a child violated Marchi's right to be free from double jeopardy and we remand for dismissal of the first degree assault conviction and for resentencing only on her conviction for attempted first degree murder.

## II. JURY INSTRUCTIONS ON DIMINISHED CAPACITY

¶21 Marchi next contends that the trial court erred when it failed to instruct the jury that the State had the burden of disproving Marchi's diminished capacity defense beyond a reasonable doubt. She argues that the State had the burden because evidence of her diminished capacity negated the mens rea element of first degree murder. Marchi asks us to overturn existing case law that treats diminished capacity as evidence a jury may consider when determining the defendant's mental state and, instead, to treat it as an affirmative defense to the charges that the State must disprove. To the extent Marchi argues that diminished capacity adds an element to the charged offense that the State must disprove, we have twice rejected that argument. *State v. Sao*, 156 Wn. App. 67, 76, 230 P.3d 277 (2010); *State v. James*, 47 Wn. App. 605, 608, 736 P.2d 700 (1987).[3] We adhere to those decisions here.

¶22 "Parties are entitled to [jury] instructions that, when taken as a whole, properly instruct the jury on the applicable law, are not misleading, and allow each party the opportunity to argue their theory of the case." *State v. Redmond*, 150 Wn.2d 489, 493, 78 P.3d 1001 (2003). When

---

[3] Division One of this court has also rejected the argument that the court must give an instruction expressly stating that the State bears the burden of disproving intoxication. *State v. Fuller*, 42 Wn. App. 53, 55, 708 P.2d 413 (1985). In *Fuller*, the defendant presented expert testimony that he did not have the mental capacity to knowingly assault the victims because he was suffering from severe depression and intoxication at the time of the crimes. 42 Wn. App. at 54. The court held, "An instruction on burden of proof similar to the one given on self-defense need not be given because [intoxication] is not a legally recognized defense. . . . Intoxication may raise a reasonable doubt as to the mental state element of the offense, thus leading to acquittal or conviction of a lesser included offense, but evidence of intoxication does not add another element to the offense." *Fuller*, 42 Wn. App. at 55.

read together, jury instructions must inform the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). "It is reversible error to instruct the jury in a manner that would relieve the State of this burden." *Pirtle*, 127 Wn.2d at 656.

¶23 "We review a challenged jury instruction de novo, evaluating it in the context of the instructions as a whole." *Pirtle*, 127 Wn.2d at 656. When a defendant presents substantial evidence of a mental illness or disorder and the evidence logically and reasonably connects the defendant's alleged mental condition with the inability to form the mental state necessary to commit the charged crime, a trial court must give a diminished capacity instruction. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001); *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003).

¶24 Here, the trial court gave the following diminished capacity instruction: "Evidence of mental illness or disorder may be taken into consideration in determining whether the defendant had the capacity to form intent." CP at 133. It also instructed the jury that the State had the burden to prove each element of the charged crimes beyond a reasonable doubt. It did not instruct the jury that the State had to disprove Marchi's diminished capacity claim.

¶25 The diminished capacity jury instruction allows a jury to take evidence of diminished capacity into account when determining whether the defendant could form the requisite mental state. *State v. Stumpf*, 64 Wn. App. 522, 524-25, 827 P.2d 294 (1992); *James*, 47 Wn. App. at 608. When diminished capacity is pleaded as a defense it is treated as a rule of evidence that allows the defense to introduce evidence relevant to subjective states of mind. *Stumpf*, 64 Wn. App. at 525 n.2 (citing John Q. La Fond & Kimberly A. Gaddis, *Washington's Diminished Capacity Defense Under Attack*, 13 U. Puget Sound L. Rev. 1, 22

(1989)).[4] " 'Diminished capacity arises out of a mental disorder, usually not amounting to insanity, that is demonstrated to have a specific effect on one's capacity to achieve the level of culpability required for a given crime.' " *Stumpf*, 64 Wn. App. at 524 (quoting *State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028 (1989)).

¶26 "As a defense, diminished capacity allows a defendant to negate the culpable mental state element of a crime 'by showing that a given mental disorder had a specific effect by which his ability to entertain that mental state was diminished.' " *Stumpf*, 64 Wn. App. at 525 (quoting *Gough*, 53 Wn. App. at 622). This defense "is available if the defendant was unable to form the 'specific intent' required to commit the crime charged." *State v. Nuss*, 52 Wn. App. 735, 738, 763 P.2d 1249 (1988).

¶27 Marchi's argument mirrors the appellant's argument that we first rejected in *James*. 47 Wn. App. 605. James relied on a diminished capacity defense based on intoxication and depression. *James*, 47 Wn. App. at 606-07. He argued that a trial court must instruct the jury that the State bears the burden to disprove his diminished capacity defense beyond a reasonable doubt. *James*, 47 Wn. App. at 608. Like Marchi, James likened diminished capacity to self-defense. *James*, 47 Wn. App. at 608.

¶28 We rejected James's argument because self-defense is a lawful act that absolves the actor of culpability and, consequently, the absence of self-defense is an element the State must prove. *James*, 47 Wn. App. at 608. When self-

---

[4] *Washington's Diminished Capacity Defense Under Attack* states:

[T]he so-called diminished capacity defense in Washington is essentially a rule of evidence. Some of the cases admit expert evidence to prove that the defendant lacked the "capacity" or "ability" to form the necessary mental element, while others hold that expert evidence is relevant to prove the defendant did not act with the necessary state of mind. Some commingle the two approaches. Regardless of the precise form of the expert testimony, it is simply a court-made rule which permits a defendant in a criminal trial to introduce evidence relevant to the presence or absence of subjective states of mind. It is not a plea in mitigation, an affirmative defense, or a normative re-fashioning of the culpability elements of the crime.

13 U. Puget Sound L. Rev. at 22 (footnotes omitted).

defense is pleaded, a specific burden of proof instruction is necessary to avoid juror confusion about who has the burden of proof on the self-defense issue. *James*, 47 Wn. App. at 608. In *James*, we clarified that, unlike self-defense, diminished capacity caused by intoxication is not a "true" defense. 47 Wn. App. at 608. Neither intoxication nor diminished capacity adds an additional element to the charged offense. *James*, 47 Wn. App. at 608. We reaffirmed this reasoning in *Sao*. 156 Wn. App. at 76.

¶29 And, contrary to Marchi's argument, the requirements for establishing diminished capacity are essentially the same as those required to prove intoxication. *Compare State v. Washington*, 36 Wn. App. 792, 793, 677 P.2d 786 (1984), *with State v. Griffin*, 100 Wn.2d 417, 418-19, 670 P.2d 265 (1983). Perhaps, more importantly, neither diminished capacity nor intoxication is a complete defense but, rather, is evidence the jury may take into account when determining whether the defendant could form the requisite mental state to commit the crime. *Stumpf*, 64 Wn. App. at 524; *James*, 47 Wn. App. at 608.

¶30 We hold that the trial court's instructions clearly and unambiguously allocated to the State the burden of proving the crimes beyond a reasonable doubt. The jury instructions sufficiently informed the jury that the State had the burden of proving Marchi's intent beyond a reasonable doubt. And the trial court instructed the jury that it could consider her mental illness or disorder when deciding if the State proved that she acted with the requisite intent. We find no error in the trial court's instruction.

¶31 We remand to the trial court to dismiss the conviction for first degree assault of a child as a matter of law and for resentencing for attempted first degree murder only.

WORSWICK, A.C.J., and ARMSTRONG, J., concur.

Review denied at 171 Wn.2d 1020 (2011).