

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34326-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL JOHN LEVASSEUR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Michael Levasseur, Jr., appeals from his conviction for second degree assault and the trial court's rejection of his motion for a new trial. We affirm.

FACTS

Mr. Levasseur's conviction arose from an altercation in Republic with his friend, Johnny Hawkins. Hawkins and his wife, Sally Wilson, allowed Levasseur to park his camper at their residence in Republic. Levasseur, otherwise homeless, would move his camper from location to location over time.

In May 2015, Mr. Levasseur's camper was parked at the Hawkins-Wilson residence. His sometime romantic partner, Isabelle Sailor, had been staying in the camper until Hawkins kicked her off the Hawkins-Wilson property. On May 20, Levasseur, Hawkins, Wilson, and several of their friends, including Torrie Wright, another sometime romantic interest of Mr. Levasseur, were drinking at the Hawkins-Wilson residence. Levasseur left the drinking group to join Ms. Sailor in the trailer for a romantic encounter.

When Levasseur returned, an intoxicated Hawkins was alone. Telling Levasseur that he was "tired of all this drama" and unhappy with Levasseur's treatment of women, Hawkins told his guest to remove the trailer from the property and find another place to live. A fight ensued that left Hawkins with six or seven fractures to his facial bones and with the loss of several teeth. The details of that fight were the subject of conflicting testimony, but only Mr. Levasseur's version has any relevance to the issues in this appeal.

Despite being the one who suggested the fight, Mr. Levasseur kept telling Hawkins, a smaller man who had one foot in a walking boot cast, that it would be a bad decision to fight him. According to Levasseur, who was trained in military combat and claimed to be very skilled, he initially declined to strike a blow against Hawkins and successfully evaded several swings. However, he got backed into a corner and had his hair set on fire when Hawkins threw a lit cigarette on him. At that point, with the hair

being singed, Hawkins allegedly tried to "sucker punch" him, so Levasseur defended himself by striking a "heavy overhand" blow. When Hawkins later pulled him to the ground, Levasseur used his forearm to strike Hawkins across the face as he landed on him, ending the encounter by knocking Hawkins out.[1] At the request of Wright, Levasseur turned Hawkins on his side because he was making choking noises. He also spoke to the 911 operator at Wright's request.

The officer who interviewed Levasseur did not observe any injuries or see any burn marks. Levasseur was not agitated or in a frenzy, but did appear a little anxious.

The court had set bond at first appearance because of lack of ties to the community. The following week, on May 29, 2015, Mr. Levasseur was arraigned on a charge of second degree assault. He was represented by appointed counsel Dennis Morgan. Morgan told the court that the case was going to be defended on the basis of self-defense. The prosecutor requested bail continue because of the defendant's criminal history and the injuries inflicted on Mr. Hawkins. Defense counsel argued for release to an area homeless shelter or to a Veterans Administration facility. The judge indicated that he did not recall the facts of the case and stated that he would reconsider bond if a veterans group was willing to host Mr. Levasseur and take responsibility for him. Report of Proceedings (RP) at 14-15. The court concluded:

---

[1] Wilson and Wright both testified that Mr. Levasseur continued to strike the unconscious Hawkins in the face.

3

I have no desire really to hold Mr. Levasseur in custody; I'm concerned about what I understand from last time to be potentially some untreated, some untreated mental health issues, whether that's PTSD or some other thing, so if you can get to the bottom of that with the Veteran's organization, indicate that they're prepared to, you know, monitor treatment or otherwise assure the stability of a residence and assure that he's able to get treatment, if that's what he needs, at least be evaluated, I'll absolutely reconsider bond.

My experience with Mr. Levasseur here in Court is he's been polite and responsive and would probably do what the Court asked him to do, but I am concerned about the mobility of his residence, the potential and untreated mental health condition based on what he told me last time, and I think that does create a risk for the community, perhaps not the victim but, I don't know, a serious charge, haven't seen the affidavit of probable cause, maybe that'll tell me more. So, I'm going to direct that Mr. Levasseur appear rather than not appear at arraignment [sic], and that way if defense Counsel has kind of run those things down, we can talk about it. It'd be Judge Nielson at that time. I don't really have a spot I can write that in. I'll try to . . . I'll write in, "The Court will entertain argument about eliminating bond requirement if Defendant can demonstrate adequate housing."

So here's what it said, "The Court, at omnibus, will entertain argument about eliminating bond requirement if Defendant can demonstrate adequate housing and mental health services through a VA related agency." So if they're out there and they're prepared to provide those services, which could include transportation services, maybe even into Spokane if necessary.

RP at 15-17.

Five days later, attorney James Irwin was appointed to replace Mr. Morgan. Trial was conducted seven months later, with the defense trying the case under a theory of self-defense. A dozen witnesses, including Mr. Levasseur, testified. The jury rejected the claim of self-defense and convicted as charged. At the subsequent sentencing hearing,

the parties argued for a sentence at opposite ends of the standard range of 6-12 months. The trial court imposed a 9 month sentence.

Mr. Levasseur promptly appealed to this court. While the appeal was pending, retained counsel appeared for Mr. Levasseur in the trial court and filed a motion for a new trial on the basis of ineffective assistance of trial counsel. In particular, he argued that Mr. Irwin had not obtained his mental health records from Veterans Administration hospitals across the county. They showed that Mr. Levasseur had been removed from combat due to mental health concerns and later was discharged from the military in 2007 due to a personality disorder. Another doctor also diagnosed him with posttraumatic stress disorder (PTSD).

The trial court ultimately rejected the motion. The court expressly found that (1) no evidence was presented from either Mr. Irwin or Mr. Levasseur concerning their communication with each other, (2) self-defense was asserted in the omnibus response and the case was tried on that theory, (3) Mr. Levasseur testified in detail about the altercation, and (4) defendant consciously and willfully acted during the assault and never lost consciousness at any time. The court concluded that self-defense was a sound tactic and there was insufficient evidence to rebut the presumption of effectiveness.

A panel considered this case without hearing oral argument.

No. 34326-0-III
*State v. Levasseur*

ANALYSIS

Consistent with the new trial motion, this appeal argues that trial counsel performed ineffectively for failing to investigate and develop a diminished capacity defense for trial and for failing to argue Mr. Levasseur's mental health issues at sentencing. He also faults the trial court for not ordering a competency evaluation. These claims fail for lack of factual support and are considered together because all relate to the same underlying concern.[2]

Very well settled principles apply to this argument. An attorney must perform to the standards of the profession; failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts evaluate counsel's performance using a two-prong test that requires courts to determine whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. When a claim can be disposed of on one ground,

---

[2] Appellant also contends that the trial court erred in failing to grant a new trial due to these arguments. Since the arguments do not establish an entitlement to relief, the derivative argument that the trial court failed to grant relief is redundant and we need not discuss the new trial motion.

6

a reviewing court need not consider both *Strickland* prongs. *Id*. at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

At issue in this case is whether trial counsel, Mr. Irwin, rendered ineffective assistance for failing to investigate Mr. Levasseur's mental health records. Unlike many cases that present ineffective assistance arguments on direct appeal, this case has some evidence bearing on the topic due to the motion for a new trial. However, that motion failed, and this appeal fails, because Mr. Levasseur did not prove the relevance of his mental illnesses to this case. In particular, Mr. Levasseur has not connected his mental health problems to his behavior at the time of the crime with which he was charged. There is no evidence that those problems affected his ability to intentionally assault Mr. Hawkins.

A trial court must instruct on diminished capacity "whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged." *State v. Griffin*, 100 Wn.2d 417, 418-419, 670 P.2d 265 (1983). A defendant is entitled to a diminished capacity instruction if (1) the crime charged includes a particular mental state as an element, (2) the defendant presents evidence of a mental disorder, and (3) expert testimony logically and reasonably connects the defendant's alleged mental condition with the asserted inability to form the mental state required for the crime charged. *State v. Atsbeha*, 142 Wn.2d 904, 914, 921, 16 P.3d

7

626 (2001). The testimony of an expert witness is necessary to present a diminished capacity defense. *State v. Stumpf*, 64 Wn. App. 522, 526, 827 P.2d 294 (1992).

Against this backdrop, appellant's challenges fail. As the trial court pointed out, there is no evidence in the record concerning what Mr. Irwin investigated, if anything, other than the self-defense claim. No affidavit was sought from him, nor was he called to testify in support of the new trial motion. Mr. Levasseur likewise has failed to indicate anything concerning his strategy discussions with Mr. Irwin. There also was no information put forth that would suggest that diminished capacity was at issue during the assault incident.[3] Having conducted something of an inquiry in support of the new trial motion, retained counsel never put forth any evidence that suggested diminished capacity was a potential issue in the case. No effort was made to obtain an evaluation that attempted to establish whether Mr. Levasseur's mental health problems impacted his ability to act intentionally at the time of the assault. There simply was no basis for going forward on a mental health defense.

---

[3] This fact distinguishes the case Mr. Levasseur relies on, *State v. Fedoruk*, 184 Wn. App. 866, 339 P.3d 233 (2014). There the court reversed a murder conviction due to counsel's belated request (a day before trial) to delay in order to investigate a diminished capacity or insanity defense that the State conceded was suggested by the defendant's behavior at the time of the crime. *Id*. at 885.

The same problem confounds the claim that defense counsel erred by not submitting mental health history at sentencing. Here, Mr. Levasseur relies on a specific statutory mitigating factor:

> The defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired. Voluntary use of drugs or alcohol is excluded.

RCW 9.94A.535(1)(e).[4] In order to apply this mitigating factor, it must have application to the charge before the court. *Id.* Again, that evidence is lacking here. There is no reason in the record to believe that Mr. Levasseur was incapable of conforming to the requirements of the law when he engaged in the fight with Mr. Hawkins.

In addition to the lack of expert support for his claim, the defendant's own testimony undercuts any speculation that his mental health was at issue to the extent that it impacted his ability to appreciate what he was doing. He explained how he attempted to avoid the fight, despite first suggesting the activity, and then intentionally took defensive action when he could no longer evade Hawkins. He testified to purposeful

---

[4] To justify an exceptional sentence under this provision, a defendant must prove impairment in his or her capacity to think and act in conformity with the law. *State v. Rogers*, 112 Wn.2d 180, 185, 770 P.2d 180 (1989). Impaired judgment and irrational thinking, alone, are insufficient to establish the mitigating circumstance. *Id.* Mr. Rogers was a 50-year-old, highly-educated former schoolteacher and school principal, whom the trial judge determined was acting under severe stress. *Id.* at 182, 184. On review, the court found no proof that the stress Rogers experienced significantly impaired his capacity to appreciate the wrongfulness of his conduct. *Id.* at 185. The court reversed on that basis and made clear that the test is "stringent." *Id.*

9

conduct that was the result of reasoned thought. His testimony was the opposite of that needed to support a diminished capacity theory.

For all of these reasons, appellant has not established that Mr. Irwin erred. There simply was no factual basis for asserting mental health concerns as a potential theory of defense or even for sentencing mitigation.

Having turned up no evidence on this point, Mr. Levasseur nonetheless faults Mr. Irwin for not investigating the possibility himself. As the trial court noted, we have no evidence to support the theory that Irwin failed to investigate. Still, even the failure to conduct an investigation, if that was what occurred, is not per se error by an attorney. *See Strickland*, 466 U.S. at 695-696; *State v. Fedoruk*, 184 Wn. App. 866, 883, 339 P.3d 233 (2014) (citing *In re PRP of Brett*, 142 Wn.2d 868, 882-883, 16 P.3d 601 (2001)). The effort to fault counsel on this basis also fails.

In its seminal case on ineffective assistance of counsel, the United States Supreme Court noted:

> There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689. That, at most, is what the new trial evidence suggested here. Mr. Levasseur had mental health issues and maybe there could be a basis for asserting a defense, but no evidence in the record suggests that was anything more than a speculative possibility. Without any indication that his mental health was in play during this

10

encounter, his mental health argument does not even rise to the level of presenting an alternative way to have defended the case. Under *Strickland*, he needed to show much more than that. He did not.

Lastly, Mr. Levasseur faults the trial court for ordering a mental health evaluation at arraignment and then not following through with the order. This contention is contrary to the record, which is set out at some length earlier in this opinion. No evaluation was ordered. As he noted, the trial judge did not recall the facts of the case, but recalled an assertion from the first appearance that Mr. Levasseur had an untreated mental health condition. Because of that, the court required bond due to his potential danger to the community, but was willing to reconsider bond if someone was willing to take responsibility for Mr. Levasseur or if needed to facilitate an evaluation or treatment. RP at 15-16. The ensuing commentary confirmed that there were no judicial concerns about Mr. Levasseur's competency. He was noted as being polite and willing to follow the court's directions. Neither the judge nor either of the attorneys suggested that Mr. Levasseur undergo a competency evaluation. The issue simply was not in the minds of anyone.

No evaluation was considered or ordered. The trial court could not have erred in failing to follow-up something it never directed to happen. There was no error.

11

No. 34326-0-III
*State v. Levasseur*

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Pennell, A.C.J.

12