IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34670-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPHINE ELLEN JOHNSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Josephine Johnson appeals from her conviction for first degree assault of her husband, arguing that the trial court erred in refusing to instruct on self-defense, in excluding expert testimony, and in receiving and instructing the jury concerning the special verdicts. We affirm.

FACTS

Josephine Johnson shot her husband, Donald Bitterman, on December 23, 2014. How and why she did so are questions to which she gave varying answers over time. Those varying answers present the basis for several of her arguments in this appeal.

According to Bitterman, Ms. Johnson walked up to him after overhearing a telephone conversation he was having with his sister, said "I don't want to do this, but I

have to," and then pulled out a gun and shot him. Johnson's son, Arthur Osborn, said that she ran into his nearby trailer still holding the gun. Osborn took the gun from her and went to the house to aid Bitterman.

Johnson told the police that afternoon that she was planning to leave Bitterman that day, but that her husband would not let her take her belongings. She could not take it anymore, so she got a gun out of a bedroom drawer and pointed it at his chest where it would "do the most good." Bitterman tried to grab the gun and it went off. She acknowledged that she should not have shot him.

At the omnibus hearing, defense counsel gave notice of reliance on self-defense, diminished capacity, and battered spouse syndrome defenses. Dr. April Gerlock, an expert on battered spouse syndrome, interviewed Ms. Johnson and opined that she was a battered spouse. Dr. Gerlock did not indicate whether Ms. Johnson had the ability to form the intent to shoot her husband.

Dr. Cedar O'Donnell of Eastern State Hospital evaluated Ms. Johnson for diminished capacity due to evidence that she had suffered traumatic brain injury in a vehicle accident years earlier. The doctor determined that Ms. Johnson had "a documented history of deficits in memory, judgment, and reasoning." However, O'Donnell's report concluded that her actions at the time of the incident were "consistent with the capacity for intentional behavior."

On the first day of trial, defense counsel advised the court that he would forego self-defense and pursue the case on a theory of accident. He still desired to introduce evidence of prior instances of domestic violence and the battered spouse syndrome to explain why Ms. Johnson picked up the gun. The trial court found that the battered spouse diagnosis was no longer relevant since the defense had abandoned the theory of self-defense, but that some of the individual acts of domestic violence that Ms. Johnson testified about during a motion-in-limine were admissible. Dr. Gerlock's testimony was, thus, excluded.

The court also granted the State's motion-in-limine to exclude testimony from Dr. O'Donnell since there was no basis to instruct on diminished capacity. Defense counsel agreed that there was ample evidence that his client understood what she was doing at the time of the incident.

Ms. Johnson testified at trial that the gun accidentally discharged and was cross-examined about discrepancies between her original story to the police and her current version. A video copy of the police interview was admitted into evidence in rebuttal. Ex. 32. At the conclusion of the case, defense counsel then proposed an instruction on self-defense, arguing that the video provided a factual basis for the instruction. The trial court denied the instruction, ruling that there was no factual basis for Ms. Johnson subjectively believing that she needed to use force at that time.

The defense argued the case to the jury on a theory of accident. Nonetheless, the jury convicted Ms. Johnson of first degree assault. When the jury initially returned with its verdict, the court discovered that none of the three special verdict forms had been filled out. The judge instructed the jury to complete the special verdicts. When the jury returned, it answered "yes" on all of the special verdict forms.

The court imposed a standard range sentence that included a firearm enhancement. Ms. Johnson timely appealed to this court and was allowed to remain out of custody during the appeal. A panel heard oral argument of the appeal.

ANALYSIS

Ms. Johnson argues that the trial court violated her right to present a defense by denying the self-defense instruction and excluding evidence by Dr. Gerlock and Dr. O'Donnell. She also argues that the court erred by coercing the special verdicts and in its instructions concerning the special verdicts. We address the four issues in the stated order.

*Self-Defense Instruction*

Ms. Johnson first argues that the trial court erroneously rejected her self-defense instruction, contending that Exhibit 32 provided a basis for the instruction. We agree with the trial court that there was insufficient evidence to submit the issue to the jury.

The governing law is well settled. Trial courts have an obligation to provide instructions that correctly state the law, are not misleading, and allow the parties to argue

4

their respective theories of the case. *State v. Dana*, 73 Wn.2d 533, 536-537, 439 P.2d 403 (1968). A court should give an instruction only if it is supported by substantial evidence. *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986).

Self-defense is evaluated "from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees." *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002). This analysis involves both subjective and objective components. *Id*. at 242-243. For the subjective component, the jury must "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred." *Id*. at 243. For the objective component, the jury must "determine what a reasonable person would have done if placed in the defendant's situation." *Id*.

These two components of self-defense break down into four elements: "(1) the defendant subjectively feared that he was in imminent danger of death or great bodily harm; (2) this belief was objectively reasonable"; "(3) the defendant exercised no greater force than was reasonably necessary"; and "(4) the defendant was not the aggressor." *State v. Callahan*, 87 Wn. App. 925, 929, 943 P.2d 676 (1997). If a jury is instructed on self-defense, the State is required to disprove the defense beyond a reasonable doubt. *State v. Acosta*, 101 Wn.2d 612, 615-616, 683 P.2d 1069 (1984). Disproof of any one of these elements negates the self-defense claim. *Callahan*, 87 Wn. App. at 929.

When a trial court refuses to give a self-defense instruction because it finds no evidence supporting the defendant's subjective belief of imminent danger of great bodily harm, the standard of review on appeal is abuse of discretion. *Read*, 147 Wn.2d at 243. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The failure to provide a self-defense instruction when supported by the evidence is reversible error. *State v. George*, 161 Wn. App. 86, 100-101, 249 P.3d 202 (2011).[1]

Here, the trial court rejected the instruction due to Ms. Johnson's failure to establish that she subjectively feared she was in imminent danger of great bodily injury. We review that decision for abuse of discretion. *Read*, 147 Wn.2d at 243. There were tenable reasons for declining to give the instruction. Ms. Johnson never testified that she believed she needed to point a gun at, let alone shoot, her husband due to fear of imminent harm. She also did not present any evidence that her husband was about to harm her, or that she even had any reason for believing that might be the case. In short, there were multiple reasons for concluding that the first element was not established.[2]

The court did not abuse its discretion by rejecting the self-defense instruction.

---

[1] For this reason, we need not separately consider Ms. Johnson's argument that her right to present a defense also was violated by the refusal to give a self-defense instruction.

[2] For that reason, we need not address the reasonableness of the need to act, nor the proportionality of that behavior to any alleged threat.

*Excluded Testimony*

Ms. Johnson next argues that her right to present a defense was violated by the

exclusion of the diminished capacity defense and testimony from Dr. O'Donnell and Dr.

Gerlock.  Because the proposed testimony did not support any defense that was before

the jury, there was no error.

We review this claim under familiar standards.  The trial court's decision to admit

or exclude evidence is reviewed for abuse of discretion.  *State v. Franklin*, 180 Wn.2d

371, 377 n.2, 325 P.3d 159 (2014); *State v. Strizheus*, 163 Wn. App. 820, 829, 262 P.3d

100 (2011).  "An erroneous evidentiary ruling that violates the defendant's constitutional

rights, however, is presumed prejudicial unless the State can show the error was harmless

beyond a reasonable doubt."  *Franklin*, 180 Wn.2d at 377 n.2.  Both the Sixth

Amendment of the United States Constitution and article I, § 22 of the Washington

Constitution guarantee the criminal defendant's right to present a defense.  *Washington v.

Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Thomas*, 150

Wn.2d 821, 857, 83 P.3d 970 (2004); *Strizheus*, 163 Wn. App. at 829-830.  But a

criminal defendant does not have a constitutional right to present irrelevant or

inadmissible evidence.  *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); *State v.

Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

Diminished capacity is a common law defense in Washington.  It can be raised

"whenever there is substantial evidence of such a condition and such evidence logically

7

and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged." *State v. Griffin*, 100 Wn.2d 417, 419, 670 P.2d 265 (1983). A defendant is entitled to a diminished capacity instruction if (1) the crime charged includes a particular mental state as an element, (2) the defendant presents evidence of a mental disorder, and (3) expert testimony logically and reasonably connects the defendant's alleged mental condition with the asserted inability to form the mental state required for the crime charged. *State v. Atsbeha*, 142 Wn.2d 904, 914, 921, 16 P.3d 626 (2001). The testimony of an expert witness is necessary to present a diminished capacity defense. *State v. Stumpf*, 64 Wn. App. 522, 526, 827 P.2d 294 (1992).

It is doubtful that any claim related to diminished capacity was preserved in the trial court. The trial court granted the motion-in-limine excluding the defense *after* defense counsel eschewed reliance on the defense. Moreover, no instruction was ever proposed concerning the topic. The defense lost its relevance because Ms. Johnson decided not to pursue the defense.

Nonetheless, even if diminished capacity is properly before this court, the trial court correctly determined there was no basis for presenting evidence on the topic. Critical to the defense is the testimony of an expert who could explain why Ms. Johnson, by reason of mental disease or defect, lacked the ability to intend her actions. *Stumpf*, 64 Wn. App. at 526. Dr. O'Donnell did not propose to offer that testimony. Indeed, the

evaluation concluded that Ms. Johnson did have capacity to intend her actions. Dr. Gerlock did not even opine on the topic.[3] Thus, one of the critical foundation elements to a diminished capacity defense was lacking. The trial court did not abuse its discretion in excluding the defense. Because there was no basis for pursuing diminished capacity, Dr. O'Donnell's testimony was irrelevant.[4] The constitutional right to present a defense was not implicated. *Hudlow*, 99 Wn.2d at 15.

The same conclusion applies to Dr. Gerlock's testimony. Her proposed testimony on battered spouse syndrome related to the self-defense theory. *E.g.*, *State v. Allery*, 101 Wn.2d 591, 597, 682 P.2d 312 (1984). However, that theory, as discussed earlier, was not supported by the evidence. Testimony concerning the battered spouse syndrome was, therefore, irrelevant. The trial court understandably excluded the evidence. That action did not constitute a violation of Ms. Johnson's right to present a defense.

---

[3] Defense counsel admitted that there was plenty of evidence that his client had the capacity to act intentionally, and did not suggest there was any evidence that she lacked capacity. Report of Proceedings (RP) (June 17, 2016) at 99.

[4] Ms. Johnson also contends that evidence of her dementia was relevant to explain her varying stories about the incident. However, this claim was raised only in support of possible sur-rebuttal and was never explained to the trial court, nor was it ruled on by the trial judge. RP (June 17, 2016) at 120 *et seq*; RP (June 20, 2016) at 1-43. The defense rested without calling Dr. O'Donnell or asking to be allowed to do so. RP (June 20, 2016) at 59. The opportunity to present this evidence was waived. Potential evidence explaining prior testimony also does not itself constitute a defense to a crime nor present an issue of constitutional magnitude that can be addressed for the first time on appeal. RAP 2.5(a).

Each of the claimed defenses lacked evidentiary support. The trial court did not err in excluding irrelevant testimony relating to legally insufficient defenses.

*Special Verdicts*

Lastly, Ms. Johnson contends that the trial court erred both in accepting the special verdicts and in the form in which the instructions were presented. Her arguments fail to establish error.

When the jury initially returned with its verdict on the assault charge, none of the special verdict forms had been filled out. The court directed the jury to return to deliberations and "attend" to the special verdict forms. Defense counsel did not object to the court's action. Ms. Johnson's claim that the trial court improperly interfered with the special verdicts is unpersuasive. She had the right to have the jury return a verdict free of coercion by the trial judge. *E.g.*, *State v. Boogaard*, 90 Wn.2d 733, 736-737, 585 P.2d 789 (1978). However, nothing in this record suggests that the judge behaved coercively by telling the jury to return to deliberations. This contention simply is without merit.

Ms. Johnson also contends that the three special verdicts were erroneously returned because none of the verdict forms expressly stated that the jury needed to be unanimous to answer the special verdict. She points out that the pattern instruction verdict forms now state the unanimity requirement. From these facts, she argues that her right to a unanimous finding was violated. It was not.

Her argument ignores jury instruction 2, which states in part:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict.

Clerk's Papers (CP) at 163.

Similarly, the concluding instruction told jurors that they must deliberate in order to reach a unanimous verdict on the charge of first degree assault and the two included assault offenses. CP at 191-192. While she correctly notes that the concluding instruction did not mention the special verdicts, she can point to no competing instructions that would have suggested nonunanimity was possible on the special verdicts. The only instructions given to the jury required unanimity in order to return a verdict. There was no reason to think that jurors could have applied a different standard to the special verdicts.

If these verdict forms constituted constitutional error, the error was harmless beyond a reasonable doubt because each question presented involved an uncontested factual issue. Both parties testified that they were married to each other and living together at the time of the incident; it simply was not a contested factual question that the two were involved in a domestic relationship. The fact that the assault was committed with a firearm likewise was not a disputed issue.

The jury's verdict on the first degree assault charge necessarily answered the remaining special verdict. The special interrogatory concerning the assault having been

11

committed with intent to commit great bodily harm was a restatement of the elements of the first degree assault charge; once the jury unanimously concluded that Ms. Johnson intentionally assaulted Mr. Bitterman, that answer necessarily compelled the same response to the special interrogatory. CP at 173, 199.

Ms. Johnson has not established that she was prejudiced by the alleged errors relating to the return of the special verdicts.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, C.J.